STATE v. CHAMBERS.

(Filed 10 November, 1920.)

1. **Subornation of Perjury—Perjury—Evidence.**

Upon a trial for subornation of perjury of a witness who had testified falsely in behalf of the defendant's son in a criminal action, it is competent for the State to show the commission of the act of perjury on the trial of the criminal action against the defendant's son and the defendant's threats and coercion resulting in the perjury of the witness, and such facts and circumstances in evidence on the son's trial that will tend to show defendant's motive therein and to corroborate the State's witness in the present trial for subornation of perjury.

2. **Evidence—Exclusion—Appeal and Error—Questions and Answers.**

The exclusion of the answer to a question which the witness afterwards substantially answered and when, at the time, it did not appear what the answer would have been, if erroneous, is harmless error.

3. **Instructions—Appeal and Error.**

Where the charge of the court, in a criminal action for subornation of perjury, construed as a whole, correctly states the law in relation to the evidence, a "slip of the tongue" at a certain part will not be held as reversible error; nor will any detached expression of the court be so held, when the charge is correct! in its entirety, and so construed, the presumption being that the jury did not overlook any part of it.

4. **Criminal Law—Misnomer—Idem Sonams.**

A mistake in the spelling of the defendant's name, in an indictment for subornation of perjury where it is as slight as in this case, comes within the maxim *idem sonans*, and is not reversible error on appeal.

5. **Arrest of Judgment—Judgments—Indictment—Criminal Law.**

The defect in an indictment must appear upon the face of the bill, and the objection that the proof did not conform thereto is not a ground for arresting the judgment.

6. **Subornation of Perjury—Perjury—Trials—Statutes.**

While subornation of perjury is accessional in its nature it has been made an offense separate and distinct from perjury, triable independently (Rev., 3615) and punishable as if the person committing the offense had himself committed the perjury. (Rev., 3616.)

7. **Subornation of Perjury—Definition—Perjury.**

Subornation of perjury is where the accused has instigated or procured a person to testify knowingly, willfully, falsely and corruptly, under oath administered by one lawfully qualified for the purpose, with the foreknowledge, or belief, that the testimony would be thus falsely given.

8. **Subornation of Perjury—Perjury—Admissions—Burden of Proof—Instructions—Pleas—Confession and Avoidance.**

Upon the trial of an action for subornation of a witness on a general denial of guilt by the accused, an admission by him that the witness had been convicted of perjury by a court of competent jurisdiction, is not an
45—180

admission by the accused that he had corruptly subserved him, and a charge by the court to the jury that the admission was in the nature of a plea of confession and avoidance places upon the accused the burden of showing he was not guilty of corruptly procuring the testimony, when the burden remains with the State throughout to show it beyond a reasonable doubt, and the instruction is reversible error.

APPEAL by defendant from *Ray, J.,* at May Term, 1920, of ROCK-INGHAM.

The defendant was indicted and tried for subornation of perjury at the May Term, 1920, of Rockingham Superior Court.

The State's evidence tended to show that at the August Term, 1919, four young men, Will Tolbert, Henry Chambers (son of defendant), Will Clowers, and a man by the name of Fox were indicted for breaking, entering, and stealing from the store of Edmonds at Leaksville, N. C., and the case stood for trial at that term. Of these defendants Tolbert and Henry Chambers were present, Fox and Clowers had run away. On the Sunday afternoon before this court convened on Monday morning the defendant James Chambers, father of Henry Chambers, went to the house of Mrs. Tolbert, the mother of Will Tolbert, codefendant with Henry Chambers, and, according to the testimony of Mrs. Tolbert, Will Tolbert, Tom Lemons, and the defendant James Chambers, took Mrs. Tolbert and Will into a room and said to Will, "Bill, remember what I told you. There are not but two who know anything about this, for the others are gone, and if you tell a word or leak a drop I'll shoot your brains out." When the case was called the following Tuesday morning, the court permitted the solicitor to try separately Will Tolbert and Henry Chambers, the only two of the young men caught at that time. Will Tolbert was first tried, and both he and his mother testified that neither he nor Henry Chambers had anything to do with the breaking into Edmund's store. Will Tolbert, however, was convicted and sentenced to 18 months on the roads. In the course of the trial it developed that Clowers was in Greensboro. The solicitor sent an officer immediately after him, postponing the trial of Henry Chambers until Clowers could be produced as a witness. The officer returned with Clowers, and thereupon both he and Henry Chambers pleaded guilty to the charge. Immediately after Will Tolbert was convicted and sentenced, his mother became conscience-stricken, and told one of the officers that she had sworn falsely when testifying in behalf of her son. She went back upon the stand in the afternoon and told the judge of it, and that the reason for her doing so was because the defendant James Chambers had made the threats on the Sunday afternoon before, detailing that incident in the same way then as she did on the trial of this case.

The defendant admitted that he was at Mrs. Tolbert's house, but denied that he had made any threats, particularly those set out in the State's evidence, and stated that he had gone to her house simply to prepare for the trial of his own son.

There are 37 exceptions in the record, 26 of them to the admission or exclusion of testimony.

The defendant was convicted, and from the judgment of the court upon the verdict he appealed. ·

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*

*J. M. Sharpe and J. R. Joyce for defendant.*

WALKER, J., after stating the case: The first six exceptions relate to the examination of witnesses by the State as to what occurred at the trial of Will·Tolbert, in which the perjury was alleged to have been committed. This testimony was competent for several purposes, and, among them, to show the commission of the perjury and the threats and coercion of the defendant to bring it about, and also to corroborate the State's witnesses who testified at the trial of this case. There are other reasons which sustain the rulings of the court not necessary to be set out in much detail, as they are very apparent, upon an inspection of this record. We may state this much, as applicable to these exceptions and to several others, that the testimony to which many of the exceptions were taken was competent and relevant as tending to show a motive on the part of defendant, and to present clearly the setting of the facts and circumstances, under which the defendant conceived and executed his nefarious scheme to subdue witnesses by his intimidation of them in order to protect and save his son, and thereby to obstruct the fair administration of justice in the courts, and especially was it relevant as corroborating Mrs. Tolbert. The evidence tended to show that Henry Clowers was protesting his innocence, so long as only he and Will Tolbert were present; that a separate trial being ordered, and Will Tolbert—having taken the stand and denied that he and Henry Chambers had anything to do with the entry into Edmund's store—Henry Chambers still protested his innocence until Clowers was brought from Greensboro, when, seeing that all of his efforts were futile, he plead guilty. Another reason why this testimony was admissible is that the perjury of Will Tolbert must be proven, and all the evidence excepted to tended to show, in connection with his own testimony and that of his mother, that perjury had been committed.

These reasons also apply to exceptions seven to twenty-four, both inclusive. As to exception eight, which was to the exclusion of the ques-

tion of defendant to Pat Adkins, a deputy sheriff, it appears that the question was afterwards substantially answered, and fully enough to render harmless any error, if one was committed. *Monds v. Town of Dunn,* 163 N. C., 108; *Berbarry v. Tombacher,* 162 N. C., 497. Besides, it did not appear, at the time, what his answer would have been to the question. *Smith v. Comrs.,* 176 N. C., 466. Another reason why the ruling was correct is that the proposed testimony was hearsay, as it called for the unsworn declarations of Will Tolbert, and this also applies to exception twenty-five.

The next exception was directed to what manifestly was a mere "slip of the tongue" by the judge, which was harmless, as it appeared beyond question what was the charge in the indictment and the whole case was, in that respect, tried upon the correct theory. That portion of the charge to which exception twenty-seven was addressed was an attempt by the judge to explain the nature of the offense and to state its several elements, and in no sense was it an expression of opinion upon the facts. The passage in the charge which follows shows conclusively that no expression of opinion as to the facts was intended, nor was any such opinion given or intimated. The defendant's contention was that, even if the testimony of the witnesses in the other case was false and perjured, he was in no way responsible for it, as he did not instigate it. The judge fairly stated this to the jury, and left it to them to pass upon, without any suggestion as to what should be their conclusion.

There are objections to the manner in which contentions of the parties were stated by the judge to the jury, but they come too late, as we have often held in similar cases, the following being some of the most recent ones. *S. v. Spencer,* 176 N. C., 709; *Bradley v. Mfg. Co.,* 177 N. C., 153; *Sears v. R. R.,* 178 N. C., 285, and *Hall v. Giessell,* 179 N. C., 657.

The rule as to the duty of the jury to find the facts essential to constitute guilt beyond a reasonable doubt, was sufficiently explained to the jury. It will not do to base an exception upon a single expression of the judge in his charge, omitting what naturally goes along with it, and stated in other parts thereof, but the charge should be taken and construed as a whole, in the same connected way as intended and given by the judge, and upon the presumption that the jury did not overlook any part of it. *S. v. Exum,* 138 N. C., 599; *Kornegay v. R. R.,* 154 N. C., 389; *S. v. Lewis, ibid.,* 632.

The motion in arrest of judgment was properly disallowed. As to the alleged misnomer in the spelling of Tolbert's name, the two names are so nearly alike as to bring them within the operation of the maxim *idem sonans.* *S. v. Patterson,* 24 N. C., 360; *S. v. Collins,* 115 N. C., 718; *S.*

*v. Drakeford,* 162 N. C., 667. The time when the offense was committed is sufficiently stated in the indictment.

Our statute has abolished many matters of form that do not affect the substantial merits of the case. Consol. Statutes of 1920, sec. 4616. That the proof did not conform to the allegations of the bill is not ground for arresting the judgment. The defect must appear upon the face of the bill. *S. v. Hawkins,* 155 N. C., 466. The last ground is not true in fact, as will appear from the indictment, the word "willfully" being used therein.

Subornation of perjury consists in procuring, or instigating, another to commit the crime of perjury, and is a misdemeanor at common law. While accessorial in its nature, it has been made an offense separate and distinct from perjury, and, therefore, the suborner of perjury, it has been said, may be tried before the conviction of the perjurer. 30 Cyc., 1423. The elements of the offense are there fully set forth, and they were established in this case. 30 Cyc., 1423 (b). A person is guilty of subornation of perjury if he procures another, by threats, to knowingly commit the offense. *S. v. Geer,* 48 Kansas, 752. Our statute provides that "if a person shall, *by any means,* procure another person to commit such willful and corrupt perjury, as is mentioned in the preceding section" (3615), he shall be punished as if he had himself committed the perjury. (Revisal, sec. 3616.) This is like the Kansas statute, under which *Geer's case* was decided.

At common law perjury is committed when a lawful oath is administered in some judicial proceeding or due course of justice to a person who swears willfully, absolutely, and falsely, and corruptly in a matter material to the issue or point in question. Where the crime is committed at the instigation or procurement of another, it is termed subornation of perjury, though some authorities hold that it is in fact mere perjury, but this on the theory that it is a misdemeanor, and aiders and abettors are principals and not accessories. In order to convict of this crime the jury should be satisfied from the evidence: (1) that the testimony of the witness claimed to have been suborned was false; (2) that it was given by him willfully and corruptly, knowing it to be false; (3) that the defendant knew or believed that such testimony would be false; (4) and that the defendant also knew, or believed, that the witness claimed to have been suborned would willfully and corruptly so testify; (5) that the defendant induced or procured the said witness to give such false testimony. *S. v. Fahey,* 19 Delaware Reports (3 Pennewill's), 594. There was ample evidence to prove all the elements above enumerated.

So far there was no error, but we are of the opinion that his Honor erred in his charge to the jury, which is as follows: "The court charges

STATE *v.* CHAMBERS.

you that all the requirements, all the essentials necessary to support the charge of subornation of perjury have been met by the State, in this case, it not being contended by the defendant that the other court had no jurisdiction to investigate the matter, the defense being, as the court sees it, not the truth of the State's contentions that there was testimony given which was false, but that the defendant himself did not procure it to be given; that in a measure the defendant does what is known to the law as entering a confession and pleading the avoidance. He admits that the other court had the jurisdiction and the essentials necessary under the definition of perjury, whether or not the evidence be true or false. He does not undertake to justify upon that ground, but denies and contends that he did not procure the perjury to be committed, and if he has satisfied you that that is the truth of the matter, then he would not be culpable of any crime." This was calculated to mislead the jury in two respects.. First, to say that defendant had confessed, and then pleaded in avoidance, was an intimation that he had admitted that the offense of perjury had been committed by Tolbert, and sought to avoid the effect of such admission by taking the laboring oar and satisfying the jury that he had not suborned the witness to commit the crime of perjury. The burden was not on the defendant to prove his innocence, but upon the plaintiff, throughout the case, to prove his guilt, nor was there a confession and avoidance, or anything like such a plea in a civil action, which consists in admitting the cause of action, and pleading new matter to neutralize or avoid its effect. We do not see that he confessed anything, but, however this may have been, he did not try to avoid it, but simply denied the allegations of the State that he had procured Tolbert to commit the perjury. This was not an avoidance of matter confessed, which would place the burden on defendant, but only a plea of not guilty, which imposed the whole burden upon the State to make out its case beyond a reasonable doubt, the presumption of innocence being with the defendant. This instruction of his Honor was harmful error. The plea of not guilty was a general denial of guilt, and of all evidence tending to show it. The burden, therefore, was upon the State to show guilt, and not upon the defendant to show innocence, which, of course, required the State to prove not only the perjury, but the subornation.

The testimony of Pat Adkins as to what Henry Chambers did, after he pleaded guilty, was nothing but hearsay, irrelevant, and incompetent, and it was also prejudicial. This is too plain to require the citation of any authority. To cure the errors indicated, a new trial is necessary, and is accordingly ordered for the purpose of correcting them.

New trial.