# Richmond

## Mrs. Virginia Mundy v. Commonwealth.

November 16, 1933.

Present, Campbell, C. J., and Holt, Epes, Hudgins, Gregory
and Browning, JJ.

The opinion states the case.

*R. C. Stokes, Thos. J. Wilson, Jr.,* and *Revercomb &
Revercomb,* for the appellant.

*John R. Saunders, Attorney-General,* and *Edwin H. Gib-
son* and *Collins Denny, Jr., Assistant Attorneys-General,*
for the Commonwealth.

HUDGINS, J., delivered the opinion of the court.

The accused was convicted of subornation of perjury
and sentenced to one year in jail and to pay a fine of
$500.

A brief statement of the facts is essential to a clear
understanding of the application of the principles in-
volved in the numerous assignments of error.

The accused, who operates a tea room near Alleghany
Station, at the April term, 1932, of the Circuit Court of
Alleghany county, was tried for selling whiskey to one
J. H. Ricketts. He, and others, testified that he bought

whiskey from the accused about eight o'clock on the evening of December 10, 1931.

During this trial C. M. Lockhart, called as a witness for the defense, testified that around seven-thirty or eight o'clock on the evening of December 10, 1931, the accused left her car for repair at his garage in White Sulphur Springs, West Virginia; that he completed the work on the car around nine o'clock and, at the request of the accused, left it on the street in front of Mrs. Wise's residence in White Sulphur Springs; that at the time the work was done he made a written memorandum of the date, the nature of the work and the charge therefor, and while on the stand produced a memorandum book with entries therein to that effect.

The trial judge, who observed this witness on his direct and cross-examinations, became convinced that he had given false testimony, and, acting on that belief, ordered his arrest on the charge of perjury.

Shortly after his arrest, Lockhart, without any solicitation or suggestion from any of the officers, sought and obtained an interview with the judge and, in the presence of the Commonwealth's attorney and the attorney for the accused, informed him that the greater part of his testimony previously given was false, and that the truth of the matter was that he had not seen the accused at all on December 10th. The next morning, April 21, 1932, he again took the stand and stated that he did not have a garage on December 10, 1931, and that he had testified falsely "because Mrs. Mundy asked me if I would come over and testify in her behalf and that she would pay me for coming, and I needed the money to pay the rent, and I did not get it any too good, and I done it for the support of my family more than anything else." He further testified that Mrs. Mundy had suggested the day and the hour for him to state that she left her car with him to be repaired and had agreed to pay him ten dollars for his false testimony.

Mrs. Mundy was indicted for subornation of perjury

and her trial commenced on May 11, 1932. The indictment, with certain parts deleted, is as follows:

"* * * that on the 20th, 21st, 22nd, and 23rd day of April, 1932, in the said county of Alleghany and at the circuit court held for said county on the 20th, 21st, 22nd, and 23rd day of April, 1932, at the courthouse thereof * * * one Virginia Mundy was tried on an indictment for a misdemeanor, to-wit, the sale of ardent spirits to J. H. Ricketts * * *; and that upon the trial of the said Virginia Mundy * * * C. M. Lockhart appeared at said court as a witness for and on behalf of the said Virginia Mundy and was then and there * * * sworn * * * to testify as a witness upon the trial of the said Virginia Mundy upon said indictment; * * * and that upon the trial of the said Virginia Mundy * * * it * * * became material to inquire whether the said Virginia Mundy was at her tea room at 8:15 P. M. on December 10, 1931; and that thereupon the said Virginia Mundy * * * did on the _ _ _ _ _ _ day of December, 1931, and on divers days between the _ _ _ _ _ _ day of December, 1931, and the _ _ _ _ _ _ day of April, 1932, in said county unlawfully, corruptly, feloniously by sinister and unlawful means and persuasion suborn and procure the said C. M. Lockhart to falsely, wilfully and corruptly swear * * * that the said Virginia Mundy was at his garage in White Sulphur Springs, West Virginia, on December 10, 1931, at or about eight o'clock P. M., and that he, the said C. M. Lockhart, did then and there on the trial aforesaid and in the county aforesaid so falsely, wilfully, and corruptly swear, depose, and testify before the said court upon the said trial touching the matter aforesaid * * *."

Accused demurred to the indictment on the ground that it did not allege a specific or precise date on which the alleged perjury or the subornation of perjury was committed.

The action of the court in overruling the demurrer constitutes the first assignment of error.

It has been repeatedly stated by this and other courts that the test of the sufficiency of an indictment is

whether it furnishes the accused with such a description of the crime charged against him that he will be able to intelligently make his defense, and to avail himself of the conviction or acquittal for protection against further prosecution for the same offense; or, as was stated in *Pine* v. *Commonwealth,* 121 Va. 812, 93 S. E. 652, and quoted with approval by Judge Prentis in *Boyd* v. *Commonwealth,* 156 Va. 934, 940, 157 S. E. 546, 548:

"In all cases, civil as well as criminal, a person haled into court has the right to demand that he be told in plain, intelligible language what is the cause of the complaint against him, and this right, in so far as it relates to crimes, is guaranteed by both the Federal and State Constitutions."

The indictment alleged that in a certain trial which continued for four days, *i. e.,* the 20th, 21st, 22nd and 23rd days of April, 1932, wherein the Commonwealth was plaintiff and the accused herself was defendant, she was charged with selling whiskey to one J. H. Ricketts, and that one C. M. Lockhart was sworn as a witness to testify in behalf of the defense, and that upon that occasion he committed perjury.

██ The perjury charged was the testimony of C. M. Lockhart in a specific cause and at a definite place. While the indictment did not allege the specific date, it did allege that the trial of the specific case lasted four days, and that during the progress of the trial the perjury was committed. The charge of perjury was not based upon any record or written instrument, but upon oral testimony, and in plain, intelligible language informed the accused of the occasion and in what specific proceedings the alleged perjury was committed. It entirely eliminates any possibility of mistake or surprise as to the nature of the offense intended to be charged.

Ordinarily, these specific allegations would be sufficient to meet the modern requirements of an indictment, but it is claimed that in an indictment for perjury the day upon which the offense was committed must be spe-

cifically stated, and the proof must conform to the allegation.

In support of this contention, the accused relies upon the case of *Rhodes* v. *Commonwealth,* 78 Va. 692, in which the opinion states:

"The indictment alleged that, at the circuit court begun and holden at the courthouse for the county of Rockingham, on the _____ day of February, the year 1879, in a certain plea of trespass on the case, then tried, James M. Rhodes appeared as a witness for the defendant therein, * * * and upon the said trial * * *" gave perjured testimony.

The court, in sustaining a demurrer on the same ground here assigned, said: "* * * when any time stated in the indictment is to be proved by matter of record, a variance will be fatal, and in an indictment for perjury the day in which the perjury was committed must be truly laid."

The common-law requirements for an indictment for perjury necessitated mere formal matters to be set forth with much detail and great prolixity. The result was that because of these strict requirements it was difficult to draw an indictment which would stand the common-law test. To eliminate these difficulties and simplify indictments for perjury, the statute of 23 George II was enacted in England, too late to become a part of the laws we inherited from that country. It was not until 1846 that the legislature enacted what is now Code, section 4869, which is very similar to the English statute on the subject. See *Fitch* v. *Commonwealth,* 92 Va. 824, 24 S. E. 272.

This legislative enactment was in force at the time *Rhodes* v. *Commonwealth, supra,* was decided, in which case it was held, as stated above, that any time which must be proved by matter of record must be specifically laid.

The allegations in the indictment in the *Rhodes Case* and in the case under consideration are distinguishable. In the former, the allegation was that court was begun

and held on the _ _ _ _ _ _ day of February, which necessarily required proof by the record. In the case under consideration, the indictment alleged that court was held and a certain case tried upon certain specific dates, and the record proof conforms to the allegation. No reference was made in the *Rhodes Case* to what is now Code, section 4875, the provisions of which were in effect at the time. This section provides, among other things, that "No indictment * * * shall be * * * deemed invalid for omitting to set forth * * * the time at which the offense was committed, when time is not the essence of the offense."

Time is not the essence of perjury, and when the crime charged consists of false testimony given *ore tenus* there is no sound reason to require more specific allegation of time than is required in charging the commission of other felonies in which time is not essential. There are numerous authorities, however, to the contrary. Bishop's New Criminal Procedure (4th Ed.), vol. 1, section 401, suggests the reason for this erroneous ruling:

"The liability of the pleader incautiously to make the allegation of the time of this offense (perjury) thus descriptive, and the consequence when he mistakes the date, are probably the origin of the mistake, occasionally appearing in the books, that, speaking in general terms, the common-law indictment for perjury must allege correctly and the evidence must so prove, the day of its commission, or there will be a fatal variance."

In *U. S.* v. *Matthews* (D. C.), 68 Fed. 880; *Id.*, 161 U. S. 500, 16 S. Ct. 640, 40 L. Ed. 786, defendant was indicted for perjury, and in the indictment June 7, 1894, was stated to be the precise date the perjury was committed. It was established by proof that the proceedings in which the perjury was committed continued several days and that the accused gave false testimony on the 6th day of June, instead of the 7th. Defendant urged that there was a fatal variance between the allegation and the proof. The court held that where the charge of perjury was not founded

upon any record or written evidence, proof of the precise day stated in the indictment was not material.

The acts of suborning Lockhart to give false testimony were stated to have occurred on the _____ day of December, 1931, and divers other dates between that day and the _____ day of April, 1932. When a person solicits another to commit a crime that fact is not advertised and seldom is there written evidence of the solicitation. The very nature of the charge, enticing, procuring and inducing another to commit a crime, suggests several interviews between the procurer and the procured before consummation of the crime. To compel the Commonwealth to allege and prove a specific date of the commission of such a crime would make it unnecessarily difficult to obtain a conviction.

The indictment alleged that the procuring of the false testimony took place within a period of four months. Time is no more the essence of subornation of perjury than it is of perjury itself. Hence, both crimes are within the provisions of Code, section 4875. The accused was fully informed of the nature of the charge against her and the time was laid with reasonable precision. We find no error in the action of the trial court in overruling the demurrer. This holding is in keeping with the declared judicial and legislative policy of this State, which is to have both civil and criminal cases tried on their merits and, as far as possible, to ignore mere formal defects. *Jolly* v. *Commonwealth,* 136 Va. 756, 762, 118 S. E. 109. See Judge Burks' address in 5 Va. Law Reg. (N. S.) 97.

Accused objected to the introduction of any evidence in the case until the Commonwealth had first proved that C. M. Lockhart had been convicted of perjury, and at the close of the Commonwealth's evidence moved the court to strike out all of the evidence, on the same ground. This question is embraced in assignments of error Nos. 2 and 5.

At the time of the trial, Lockhart had not been convicted of perjury, but such an indictment was then pend-

ing against him. To restate the question presented, can a person be convicted of subornation of perjury if the perjurer himself has not been convicted?

Accused relies upon *Maybush* v. *Commonwealth*, 29 Gratt. (70 Va.) 857, in which case Maybush was convicted of suborning one Graves to commit perjury. On the day after this conviction and at the same term of court, Graves was tried on an indictment charging him with perjury and acquitted. Thereupon Maybush moved for a new trial on the ground that the acquittal of Graves amounted to a judicial finding that no perjury had been committed, and that this fact had developed after the jury had returned a verdict against him. The trial court refused to sustain the motion, and on review this court said:

"In order to convict the plaintiff in error of subornation of perjury, it was essential for the Commonwealth to show that the person whom he is alleged to have suborned had committed perjury. * * * But if it had been shown to the contrary that the person alleged to have been suborned had been indicted for the offense of the perjury alleged, and had been tried and acquitted, it would have entitled the plaintiff in error to an acquittal of the offense of subornation for which he was indicted."

The only question decided in that case was that if it was judicially determined before final judgment that no perjury had been committed, there could be no conviction for subornation of perjury.

In *Austin* v. *U. S.*, 19 Fed. (2d) 127, the accused was charged with procuring two named parties to commit perjury. The indictment against one of them was dismissed, upon what grounds did not appear. It was held that the mere fact of such dismissal was not inconsistent with the guilt of the accused. It does not affirmatively appear from the opinion that the indictment against the other party charged with perjury had been tried; the inference is that such an indictment was pending.

The same question now under consideration was raised in *Stone* v. *State*, 118 Ga. 705, 45 S. E. 630, 631, 98 Am. St.

Rep. 145. In a well-considered opinion in that case, this was said:

"In perjury and subornation of perjury the act of the two offenders is concurrent, parallel, and closely related in point of time and conduct. The two crimes both culminate in the delivery of false testimony. Still the offenses are dual, each having in it elements not common to the other. There is sufficient inherent difference between the two to warrant the lawmaking power in separating the act into its component parts, making that of the suborner a new and independent offense, punishable with greater or less severity than that inflicted on the perjurer. The act of the suborner may be accessorial in its nature; and as it is necessary to prove perjury as well as subornation, it may often be best to try the perjurer first. But just as principals in the second degree, formerly called accessories at the fact, may now be tried before the principal in the first degree (*Williams* v. *State,* 69 Ga. 11), so the General Assembly can provide that one theretofore even a technical accessory is to be treated as principal, and under such a statute he is to be indicted and tried as such."

Code, section 4493, defines perjury. While section 4494 treats perjury and subornation of perjury as separate offenses, it prescribes the same punishment for both. From this we gather a legislative declaration that the suborner and the perjurer are alike to be treated, tried and punished for their separate crimes, each to be separately prosecuted for his independent criminal act. The former rule requiring prior conviction of a principal before an accessory has no application.

In *State* v. *Chambers,* 180 N. C. 705, 104 S. E. 670, 672, this is said:

"Subornation of perjury consists in procuring or instigating another to commit the crime of perjury, and is a misdemeanor at common law. While accessorial in its nature, it has been made an offense separate and distinct from perjury, and therefore the suborner of perjury, it

has been said, may be tried before the conviction of the perjurer." See, also, 30 Cyc. 1423. ·

█ We are in accord with the principles quoted above and hold that while on an indictment for subornation of perjury it is necessary for the Commonwealth to prove that perjury has been committed, it is not necessary to prove that the perjurer has been convicted of the charge.

Assignments of error Nos. 3, 4 and 6 are based upon the action of the court in admitting and excluding certain evidence. Accused admitted that the record in the former trial was material and after making this admission objected to certain parts of it being read, on the ground that it showed she had been convicted of violating the State prohibition law and it would tend to prejudice the jury.

Previous to the enactment of Code, section 4869, it was not only necessary to introduce in evidence the whole record of the trial in which it was alleged perjury had been committed, but the Commonwealth was required to set forth the whole record in the indictment. The statute dispenses with this latter formality, but expressly provides that "* * * nothing herein shall be construed to allow, without the consent of the accused, a part only of any record, proceeding, or writing to be given in evidence on the trial of such indictment or accusation."

█ The common-law rule requiring the introduction of the whole record in evidence, by this enactment, was expressly retained. The Commonwealth, with the consent of the accused, might omit certain parts of the record, but this provision does not give the accused the right to demand such omission. As a matter of fact, the record did not show a conviction; it did show that the jury found a verdict on the misdemeanor charge against the accused, but the case was pending on a motion to set aside this verdict. The mere fact that the record tended to prove the accused had committed another crime did not render the record inadmissible for the purpose for which it was offered. *State* v. *Smith,* 153 Minn. 167, 190 N. W. 48. The

trial judge on more than one occasion instructed the jury that they should not and could not consider the verdict on the former trial against the accused in determining her guilt or innocence of the charge then being tried.

Accused was charged with having sold whiskey to two United States prohibition officers at her tea room in Alleghany, at eight or eight-fifteen P. M., December 10, 1931. On the trial for subornation of perjury she objected to these two officers testifying in detail concerning the alleged sale of whiskey, on the ground that it tended to prejudice the jury. In the trial of both cases it was material, and admittedly so, to prove the whereabouts of the accused on the evening of December 10th. The sale of the whiskey and the time it is alleged it took place are so inextricably interwoven with the charge in the indictment that it would have been difficult to separate the two. Another reason for the admission of this evidence was that it tended to establish a motive for the alleged action of the accused in procuring the perjured testimony. There is no merit in these contentions.

It appears that after the Commonwealth and the defense had completed the introduction of their testimony, and prior to the giving of instructions, court adjourned for the day. When court reconvened, the accused requested that she be permitted to introduce in evidence an order of the court, entered on the previous day, allowing three witnesses summoned in behalf of the Commonwealth their fees of $35, $25 and $10, respectively. This the court refused to do.

The compensation to be paid witnesses for the Commonwealth is fixed by statute. To permit the defense in a criminal prosecution to attempt to impeach the Commonwealth's witnesses by showing that they have received mileage and attendance allowed by statute would tend to distract the minds of the jury from the real issues to be determined by them, and in the usual criminal procedure could have no possible bearing on the credibility of the witnesses.

 When all the testimony in the trial of a case has been concluded and the witnesses for the respective parties have been excused from their attendance upon court, whether the court will allow the introduction of other testimony is a question addressed to the sound discretion of the trial judge, "* * * and unless it affirmatively appears that this discretion has been abused this court will not disturb the trial court's ruling thereon." *Bishop* v. *Webster*, 154 Va. 771, 778, 153 S. E. 832, 834, 155 S. E. 828.

 The seventh assignment of error is to the action of the court in refusing to permit counsel for accused to argue to the jury that there was no moral turpitude and that no offense was committed by the accused when she offered the witness, C. M. Lockhart, $10 to come from White Sulphur Springs, West Virginia, to Covington, Virginia, to testify in her behalf.

Accused did not take the stand in her own behalf and the only witness who testified on the point was Lockhart, who stated that accused offered him $10 if he would attend court and testify as she had instructed him to do. It clearly appears from the testimony of this witness that the $10 offered him was not for his attendance upon court to testify to facts within his knowledge, but for the purpose of his attending and giving perjured testimony. The court not only refused to permit the argument along this line, but refused to so instruct the jury. There was no evidence in the record to support either an instruction or an argument on the point.

Assignments of error Nos. 9 and 10 are to the action of the court in giving and refusing instructions.

 The court gave three instructions at the request of the Commonwealth and eight at the request of the accused. These instructions fully covered the case and fairly submitted the issues to the jury. While instruction No. 3, in its closing sentence, is rather loosely drawn, the other instructions so fully and completely cover the objection that the jury could not have been misled thereby. We find no error in refusing the instructions offered by

the accused, as they were either erroneous on their face or the point involved had been fully covered by instructions given. The principles involved are well settled, and to discuss each of the objections urged *seriatim* would unnecessarily prolong this opinion and serve no useful purpose.

Accused claims that she was prejudiced in the closing argument of the Commonwealth's attorney, wherein he said:

"Now there is a lot about this letter of Mr. Carper. Mr. Carper wasn't trying to conceal anything. He evidently knew what he was talking about. What was in the letter isn't denied by the defendant—"

At this point in the argument he was abruptly stopped by an objection of accused. The court sustained the objection and instructed the jury to disregard the remarks of the Commonwealth's attorney in that particular. Immediately upon the court's sustaining the objection, accused moved to discharge the jury because of the remarks, which motion was overruled, and accused noted an exception. This motion was renewed in chambers, out of the presence of the jury. Thereupon the Commonwealth's attorney said:

"If Your Honor please, I would like to make a statement. Counsel for the Commonwealth states that the statement made in reference to the question 'that this has not been denied by defendant's evidence,' the objection was made before the Commonwealth's attorney had finished his statement. No reference whatever was made about defendant not testifying."

The court, in passing upon the motion, said that it was "satisfied from the statement of the attorney for the Commonwealth and from the circumstances that the attorney for the Commonwealth was interrupted before he had completed his statement and that he intended to say that 'what was in the letter is not denied by the defendant's evidence.' "

It is clear that the Commonwealth's attorney did not

mean to and did not comment upon the fact that accused had not taken the witness stand in her own behalf, and there is no merit in this contention.

Accused moved the court to set aside the verdict on eight grounds, six of which are disposed of in the foregoing discussion. The seventh was that the Commonwealth failed to prove the venue of the crime.

The culmination of the crime charged was the perjured testimony which was given in the same court in which this trial took place. Francis Liptrap testified that soon after the accused was arrested on the charge of selling whiskey and just prior to Christmas, 1931, she asked him to tell Lockhart that she wanted him to come over to Alleghany and see her about assisting her in the defense of the charge, and that he delivered the message. Lockhart testified that after receiving this message, he went over to Alleghany and there talked to her about the testimony that she wanted him to give; that later she saw him in West Virginia and again in Alleghany county, and on each of these occasions she discussed with him what she wanted ed him to state as a witness for her.

 This evidence for the Commonwealth, if believed, proves that both elements of the crime were committed in Alleghany county; simply because the suborner and the perjurer discussed some details of the crime in another State does not affect the venue. See Code, section 4769.

The remaining ground of the motion to set aside the verdict was that there was not sufficient evidence to support it. The accused contends that Lockhart, upon oath, has given two conflicting statements and that the solemnity upon which each statement was given nullifies the other. The court correctly instructed the jury that it was incumbent upon the Commonwealth to prove beyond a reasonable doubt that Lockhart was guilty of perjury; that it was not sufficient to prove that he made contradictory statements upon oath touching the matter, but that perjury must be proved by at least two witnesses, or by one witness and strong corroborating circumstances, that he

had knowingly and wilfully sworn falsely. As was said by Judge Staples in *Schwartz* v. *Commonwealth,* 27 Gratt. (68 Va.) 1025, 1032, 21 Am. Rep. 365:

"The whole law in reference to perjury is based upon the idea that when there is witness against witness, oath against oath, there must be other evidence to satisfy the mind.

"The rule is thus laid down in 1 Greenleaf, section 265: 'If the evidence in proof of the crime of perjury consists of two opposing statements of the prisoner, and nothing more, he cannot be convicted. * * * If both the contradictory statements were delivered under oath there is nothing to show which of them is false, where no evidence of the falsity is given.' "

The perjured statement charged in the indictment was that on the charge of selling whiskey Lockhart had testified that "Virginia Mundy was at his garage at White Sulphur Springs, West Virginia, on December 10, 1931, at or about eight o'clock P. M." Lockhart admitted that he had so testified and that it was false.

The two prohibition officers testified that Mrs. Mundy sold them the whiskey at her tea room in Alleghany at the specific time stated. Two other witnesses testified that Mrs. Mundy admitted to them that she had sold the whiskey to the officers on the occasion claimed by them. In addition, the witness, J. C. Burr, at whose building Lockhart had falsely testified Mrs. Mundy left her car to be repaired, testified that Lockhart did not rent the building until December 20, 1931, and that prior to that date he was not operating any garage.

The testimony of these witnesses, in addition to and in corroboration of the admissions made by Lockhart, is sufficient to sustain that part of the verdict which held that Lockhart had committed perjury in the first trial and was telling the truth in the second.

Counsel for the respective parties either failed to investigate the authorities, or did not see fit to give us the benefit of their investigation or original reasoning, on the

question of whether the uncorroborated testimony of the perjurer is sufficient to establish the fact that the suborner had induced him to commit the perjury. The question seems to be an open one in this State, and upon our independent investigation of the authorities in other jurisdictions we find a conflict. One line of cases holds that in a prosecution for subornation the suborned and the suborner are not accomplices and that the rule requiring corroboration of an accomplice's testimony does not apply. *State* v. *Richardson,* 248 Mo. 563, 154 S. W. 735, 44 L. R. A. (N. S.) 307; *U. S.* v. *Thompson* (C. C.), 31 Fed. 331; *State* v. *White* (Mo. Sup.), 263 S. W. 192; *Boren* v. *U. S.* (C. C. A.), 144 Fed. 801.

Another line of cases holds that while the element of perjury in the charge of subornation must be proved by two witnesses, or by one witness and strong corroborating circumstances, the suborning may be established by the uncontradicted testimony of the perjurer. *Commonwealth* v. *Douglass,* 5 Metc. (46 Mass.) 241; *State* v. *Renswick,* 85 Minn. 19, 88 N. W. 22; *Stone* v. *State,* 118 Ga. 705, 45 S. E. 630, 98 Am. St. Rep. 145; *State* v. *Ruskin,* 117 Ohio St. 426, 159 N. E. 568, 56 A. L. R. 403 and note.

In *People* v. *Evans,* 40 N. Y. 1, it was held that there can be no conviction of subornation of perjury upon the uncorroborated testimony of the perjurer, and while it was not necessary to the decision in that case to pass upon the question of whether or not the uncorroborated testimony of the perjurer was sufficient to show that the suborned was induced by the suborner to commit the crime, the language of the opinion was broad enough to cover this point. The reasoning of the court was based upon the fact that the State was demanding the conviction of the accused upon the sole testimony of a witness for whose credibility and reliability the State could not vouch.

In *Hammer* v. *U. S.,* 271 U. S. 620, 46 S. Ct. 603, 604, 70 L. Ed. 1118, which reversed the decision of the Circuit Court of Appeals in 6 Fed. (2d) 786, it was held that the uncorroborated testimony of the perjurer was not suffi-

cient to establish the element of perjury in a charge of subornation. In that case Mr. Justice Butler cited with approval, and followed the reasoning in, *People* v. *Evans,* 40 N. Y. 1, and said:

"* * * the sole reliance of the government is the unsupported testimony of one for whose character it cannot vouch—a dishonest man guilty of perjury on one occasion or the other. There is no reason why the testimony of such a one should be permitted to have greater weight than that of a witness not so discredited.

"* * * We need not consider whether his testimony was sufficient to establish the fact of subornation."

While in the act of inducing or procuring the commission of perjury the relation of suborner and suborned may not, technically, be that of accomplices, it is so close thereto that we can conceive no sound reason why the rule applicable to one should not be applicable to the other. In Virginia we have no statute requiring the testimony of an accomplice to be corroborated before there can be a conviction on his testimony alone. The rule of practice in such cases is that the court usually instructs the jury that they, as the tryers of the facts and the judges of the weight of the testimony, may convict upon the uncorroborated testimony of an accomplice, but such evidence should be received and acted upon by them with caution. See *Hunt* v. *Commonwealth,* 126 Va. 815, 101 S. E. 896.

The reason for the giving of such an instruction is that the source of such evidence is tainted and the temptation for an accomplice to exculpate himself by fixing the responsibility upon another is so strong that it is the duty of the court to warn the jury of convicting upon such uncorroborated testimony.

Turning to the record, we have the testimony of Lockhart, a self-confessed perjurer; testimony emanating from such a source is certainly tainted. As Mr. Justice Butler said in the *Hammer Case:* "Clearly the case is not as strong for the prosecution as where a witness, presumed

to be honest and by the government vouched for as worthy of belief, is called to testify * * *."

At the time that Lockhart was charged with perjury he adopted the age-old method of attempting to escape full responsibility for his illegal and contemptuous act by stating, in effect, that the woman beguiled him and he falsified.

██ Our conclusion is that in the charge of subornation of perjury the Commonwealth must (1) establish the fact that perjury has been committed, by at least two witnesses, or by one witness and strong corroborating circumstances; (2) that while the uncorroborated testimony of the perjurer is sufficient to establish the element of suborning, the jury should be instructed to scrutinize such evidence with care and caution as is done in cases involving the testimony of accomplices.

██ The accused attempted to invoke this latter principle in instruction M, which the court refused to give. The principle, however, was not correctly stated in the instruction. Inasmuch as the jury were in two other instructions—E and H—told that before they could convict the accused they must be convinced beyond a reasonable doubt, by reliable, trustworthy evidence that the accused corruptly induced Lockhart to commit the perjury, and if there was any doubt in their minds on the point they should resolve such doubt in favor of the accused, there was no error in refusing instruction M in the form requested.

██ The following analysis of the Commonwealth's evidence clearly shows that the testimony of Lockhart on the point was, in fact, corroborated. (1) Lockhart was in one State and the accused in another at the time she was charged with selling the whiskey. (2) She sent a message by a third party to Lockhart, asking him to come over to see her for the purpose of aiding in her defense. (3) After she had time to see Lockhart, she told a third party that she had seen him and he had agreed to help her in her trial. (4) On the day of the trial Lockhart appeared

and his testimony was material to the establishment of an alibi for the accused. (5) In addition to the admission of Lockhart, several witnesses testified that his testimony on that trial was false. (6) The only link in the complete chain of evidence which is supplied by Lockhart alone is just what occurred between him and the accused on the occasion, or occasions, when they· discussed her coming trial. The testimony of a witness other than Lockhart shows the purpose the accused had in seeking an interview with him, and the statement by the accused to this witness, after the interview, that she had accomplished her purpose in getting Lockhart to agree to testify for her. The evidence summarized under 2, 3 and 4 above is uncontradicted, and, added to the testimony of Lockhart himself, is sufficient, if believed by the jury, to overcome the presumption of innocence.

For the reasons stated the judgment of the trial court is affirmed.

*Affirmed.*

EPES, J., concurring:

I concur in the results and in most of what is said by the court. But I am of the opinion that upon principle the *uncorroborated* testimony of a proven perjurer should be held, as a matter of law, to be insufficient to establish that he was induced by the accused to commit the perjury. In such case the perjurer stands at the bar in a less favorable position than that in which the ordinary accomplice stands. The ordinary accomplice stands under suspicion of being a person who may lie under oath about the crime in which he was involved. The perjurer stands at the bar proven to be a man who will lie under oath. It seems to me to be an anomaly to hold that the perjurer's *uncorroborated* testimony is not sufficient to establish *his own* guilt, yet that it is sufficient to establish the guilt of another.

Instruction M, which the court refused to give, reads: "The court instructs the jury that if they believe from the

evidence beyond all reasonable doubt that the witness, C. M. Lockhart, testified falsely, then the jury are instructed that they shall consider the evidence of said Lockhart with *great* caution and give his evidence such weight as the jury believe it is.entitled to." (Italics mine.)

The instruction is not well framed, but the only valid objection which I think the Commonwealth can make to it is that it uses the expression *"great* caution." The jury should have been told that they should be cautious about accepting his testimony; but in view of the corroborating testimony which the record contains, the accused was not entitled to have the jury told that it should consider his testimony with *great* caution.

It is on this ground that I concur in holding that the court did not err in giving instruction M.