COURT OF APPEALS OF VIRGINIA


Present:  Judges Coleman, Humphreys and Senior Judge Overton
Argued at Chesapeake, Virginia


MARK FILBY, S/K/A
 MARK DOUGLAS FILBY
                                    MEMORANDUM OPINION* BY
v.    Record No. 2208-99-1          JUDGE ROBERT J. HUMPHREYS
                                         JULY 25, 2000
COMMONWEALTH OF VIRGINIA


        FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
                    Verbena M. Askew, Judge

            Paul H. Wilson (Wilson & Wilson, P.C., on
            brief), for appellant.

            Robert H. Anderson, III, Assistant Attorney
            General (Mark L. Earley, Attorney General,
            on brief), for appellee.


     Mark Filby appeals his convictions in a bench trial for

possession of burglary tools and wearing a mask in public.  He

complains (1) that the trial court erred in considering

testimony which it had earlier ruled inadmissible; (2) that the

evidence was insufficient as a matter of law to support the

conviction for possession of burglary tools; and, (3) that the

trial court erred in sentencing Filby to the maximum sentence

contemplated by law for wearing a mask in public while imposing

a lesser sentence for possession of burglary tools.  For the

reasons that follow, we disagree and affirm his convictions.

---

     * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

## I.  Background

Between 10:30 p.m. and 11:00 p.m. on February 4, 1999, Filby's estranged wife phoned police and stated that she had just seen a man outside her kitchen window staring at her, wearing a full-faced ski mask.  She told the dispatcher that she thought the man might be her husband who was banned from her property pursuant to a protective order.  An officer responded to her home and after talking with Mrs. Filby, looked around outside the window.  The officer found an air conditioning unit that appeared to have been moved to a location under the window. He also found footprints on the air conditioning unit.  The officer observed no evidence of tampering with the window. Shortly thereafter, the officer noticed a maroon vehicle in the parking lot, which he considered to have "taken off" much faster than it "really needed to."  Mrs. Filby told the officer that her husband drove a maroon Ford Taurus, so the officer radioed a description of the car and asked that the license plate be checked.

Another officer heard the call and observed the car in a convenience store parking lot across the street from the apartment complex where Mrs. Filby lived.  Filby was out of his vehicle when the officer approached him to ask his name.  After the officer informed Filby of the incident involving his wife, Filby initially denied any knowledge of the matter.  At the officer's request, Filby consented to a search of his vehicle.

-

In the front seat of Filby's vehicle, police found a pair of binoculars and a lock-blade knife.  In the trunk they found a ski mask, a long flathead screwdriver, duct tape, a BB gun, gloves, a glass cutter and a dark sweatshirt.  Filby then stated that he had not gone to his wife's house but had been in the area on other business.  After further questioning, Filby admitted that he had gone to his wife's house to see her and that he had been wearing a mask.  He stated that he had gone to the kitchen window and observed her for thirty-five minutes.  He admitted that he knew of the protective order prohibiting him from the premises.

At trial, Filby testified that he only had a key to the ignition and doors of the car.  He explained that he had the door and ignition locks "re-keyed" but not the trunk lock.  He testified that he did not have a key to the trunk and that his wife had both sets of keys.  The police officers testified that they had to get a key from Mrs. Filby to search the trunk of the vehicle.  Filby further testified that the mask he was wearing was only a partial mask which he wore for work at a recycling center and that although the items in the trunk were similar to what he would carry in his trunk, the items were not his and he didn't know how they got there.  He also testified that he had not spoken to his wife since January, then testified that he did talk to her the night of the incident because she opened the window after she saw him and yelled.  Filby stated he then ran

-

from the scene and threw the mask he was wearing into a nearby dumpster.

Mrs. Filby testified that she did not open the window and that she had not had possession of the vehicle for a month.

During the trial, the prosecutor called Michael Bunting, a maintenance man and groundskeeper, who worked at the apartment complex. Bunting testified that he had observed Filby at his wife's apartment in mid-January examining the doors and windows of his wife's apartment.

Filby objected to this testimony, and the trial court sustained the objection in part and ruled that only the fact that Filby was seen at the apartment in January would be admissible. The trial court held the evidence that Filby was examining the doors and windows was inadmissible. Based upon this ruling, Filby did not cross-examine the witness.

During Filby's closing argument, the trial court, sua sponte, indicated that it was "changing its mind" concerning the testimony of Bunting and as trier of fact would consider his testimony in its entirety. To Filby's strenuous objection that the court could not now admit evidence it had previously ruled inadmissible, and further that Filby could not now cross-examine the witness, the court responded, "I'm changing my rules." Filby was convicted as charged.

Before sentencing, Filby filed a motion to reconsider based upon the admission of the testimony of the maintenance man. The

-

Commonwealth conceded that the evidence should not have been considered because Filby was unable to cross-examine the witness in light of the subsequent ruling of the court. The Commonwealth suggested as a remedy that the court reopen the case and permit further questioning of the witness. Filby objected that this was not an adequate remedy in view of the passage of some eight weeks since the trial, during which the witnesses were no longer separated. The court granted Filby's motion to reconsider but stated that the stricken evidence did not affect Filby's convictions. In finding that the evidence was sufficient without the stricken testimony of Bunting, the court specifically noted the presumption contained in Code § 18.2-94, which it found was not rebutted by the evidence.[1]

The court then sentenced Filby to ten years imprisonment with eight years and four months suspended for his conviction of possession of burglary tools and sentenced him to five years imprisonment for wearing a mask in public.

---

[1] Code § 18.2-94 provides in pertinent part that "[i]f any person have in his possession any tools, implements or outfit, with intent to commit burglary, robbery or larceny, upon conviction thereof he shall be guilty of a Class 5 felony. The possession of such burglarious tools, implements or outfit by any person other than a licensed dealer, shall be prima facie evidence of an intent to commit burglary, robbery or larceny."

-

## II. Motion to Reconsider

Whether to reopen a case lies within the sound discretion of the trial judge. See <u>Mundy v. Commonwealth</u>, 161 Va. 1049, 171 S.E. 691 (1933).

> When all the testimony in the trial of a case has been concluded and the witnesses for the respective parties have been excused from their attendance upon court, whether the court will allow the introduction of other testimony is a question addressed to the sound discretion of the trial judge, ". . . and unless it affirmatively appears that this discretion has been abused this court will not disturb the trial court's ruling thereon."

<u>Id.</u> at 1064, 171 S.E. at 696 (citation omitted). <u>See</u> <u>also</u> <u>Minor v. Commonwealth</u>, 16 Va. App. 803, 805, 433 S.E.2d 39, 40 (1993).

We do not approve of the procedure by which the trial court chose to consider this evidence -- namely, to wait until the closing argument of counsel to announce that it would consider evidence it had previously ruled inadmissible. We agree that Filby would have been prejudiced by his inability to cross-examine Bunting following the trial court's reversal of its earlier ruling. We also find the trial court's ruling that it was "changing [its] rules" to be curious and inappropriate.

However, on the facts of this case, we find that any error was waived by Filby and cured by the trial court ultimately granting Filby the relief he sought by excluding the evidence to which he objected.

-

While the trial court created confusion and uncertainty by repeatedly changing its ruling concerning the admissibility of evidence at various stages of the proceeding, the trial court granted Filby the relief he sought when it granted his motion to reconsider. In the absence of evidence to the contrary, we are constrained to accept a statement from a trial court, sitting as the trier of fact, that it did not consider evidence which it said it would not consider. "[I]n a bench trial, the trial judge is presumed to disregard prejudicial or inadmissible evidence, and this presumption will control in the absence of clear evidence to the contrary." Hall v. Commonwealth, 14 Va. App. 892, 902, 421 S.E.2d 455, 462 (1992) (en banc) (citation omitted). We do not find that Filby has overcome that presumption.

### III. Sufficiency of the Evidence

Filby argues that the evidence was insufficient as a matter of law to support the charge of possession of burglary tools.

Filby suggests initially that he could not possess the items in question because, as he had no key to the trunk of his car, he could not have dominion and control over the items therein.

The court as trier of fact was not required to accept Filby's testimony that he had no access to the trunk and that he had disposed of his mask in a dumpster. The trial court was entitled to consider a number of factors affecting Filby's

-

credibility.  For instance, Filby made inconsistent statements to the police, he admitted to previous felony convictions, and he admitted he was under a protective order to stay away from his wife's residence.  In addition, Filby had exclusive possession of the vehicle for at least a month before the incident.  He also admitted that the items in the trunk were similar to what he would keep there.  This evidence, together with the presence of the ski mask in the trunk and the other items, is evidence from which dominion and control can be reasonably inferred.

> The mere possession of burglarious tools is not a crime under the statute.  It is possession with intent to use them to commit a crime [that is criminal].  The tools or implements may be, and usually are, designed and manufactured for lawful purposes.  But it is unusual for a person, on a lawful mission, to have in his possession a combination of tools and implements suitable and appropriate to accomplish the destruction of any ordinary hindrance of access to any building . . . .  All the statute does is to create a presumption of a criminal intent from proof of possession of burglarious tools or implements.  Such a presumption is not conclusive; it cuts off no defense.  It interposes no obstacle to a contest of all of the issues of fact, and relieves neither the court nor the jury of the duty to determine all of the questions of fact from the weight of the whole evidence.  "It is merely a rule of evidence and not the determination of a fact."  When possession is proven, the burden of going forward with the evidence shifts to the defendant, but this does not shift the burden of ultimate proof . . . .

-

*Burnette v. Commonwealth*, 194 Va. 785, 790-91, 75 S.E.2d 482, 485-86 (1953).

Filby cites *Moss v. Commonwealth*, 29 Va. App. 1, 509 S.E.2d 510 (1999), in support of his argument that the trial court's reliance on the statutory presumption that possession of burglary tools is evidence of intent is erroneous. However, Filby's reliance on *Moss* is misplaced. In *Moss*, we held

> [t]his presumption . . . does not attach to all "tools, implements, or outfit[s]" embraced by the statute, but only to such offending articles innately burglarious in character, those "commonly used by burglars in house breaking and safe cracking," particularly "suitable and appropriate to accomplish the destruction of any ordinary hindrance of access to any building . . . ."

*Id.* at 4, 509 S.E.2d at 511.

The statute in question punishes the "possession [of] any tools, implements or outfit, with intent to commit burglary . . . ." Code § 18.2-94. We find no error in the trial court concluding that, in the aggregate, Filby's possession of a ski mask, dark clothing, duct tape, a glass cutter and a long screwdriver constituted "tools, implements, or outfit[s] innately burglarious in character." *Moss*, 29 Va. App. at 4, 509 S.E.2d at 511.

In addition, although the trial court noted the existence of the statutory presumption, it did not indicate that the presumption represented the only evidence it relied upon as evidence of Filby's criminal intent. In fact, the presence of

-

Filby standing atop an air conditioning unit peering into his estranged wife's kitchen window in violation of a protective order, when coupled with his possession of items such as dark clothing, gloves, a glass cutter, duct tape, a lock-blade knife and a long screwdriver are clearly circumstances from which a fact finder could determine beyond a reasonable doubt that he intended to commit a burglary of his wife's home.

### IV.  Sentencing

Finally, Filby complains that the trial court erred in sentencing him to the statutory maximum of five years for the "lesser offense" of wearing a mask and suspending a majority of the sentence on "the greater offense" of possession of burglarious tools.  He asserts that by sentencing him in this fashion, the trial court insured that Filby would serve the amount of time suggested by the sentencing guidelines even if his conviction for the more serious crime were reversed on appeal.

First, and most importantly, Filby did not raise any objection to the sentence in the trial court, and his claim is thus procedurally barred.  See Rule 5A:18.  In any event, "when a statute prescribes a maximum imprisonment penalty and the sentence does not exceed that maximum, the sentence will not be overturned as being an abuse of discretion."  Abdo v. Commonwealth, 218 Va. 473, 479, 237 S.E.2d 900, 903 (1977).  The sentencing guidelines are advisory only and do not require trial

-

courts to impose specific sentences.  See Runyon v. Commonwealth, 29 Va. App. 573, 577-78, 513 S.E.2d 872, 874 (1999).

Affirmed.