FRANK, Judge.
Tyrone L. Waters (appellant) was convicted after a jury trial of malicious wounding while part of a mob, in violation of Code § 18.2-41.[1] On appeal, he contends the trial court erred in (1) denying his motion, based on the principle of res judicata, to reduce the malicious wounding by mob charge to assault and battery by mob, (2) disallowing cross-examination of a co-conspirator regarding his competency evaluation, (3) allowing another co-conspirator to invoke his Fifth Amendment right against self-incrimination, and (4) denying his motion to set aside the verdict based on the Commonwealth’s failure to disclose exculpatory information regarding a co-conspirator’s competency evaluation. For the reasons stated below, we affirm appellant’s conviction.
I. Res Judicata
Appellant and several other people were arrested and charged with various crimes, including malicious wounding by mob. David Hicks, one of the co-conspirators, was tried in a bench trial prior to appellant’s jury trial. The trial court found Hicks guilty of the lesser-included offense of assault and *640 battery by mob. Appellant filed a pretrial motion based on Hicks’s trial, arguing he was “a person so identified in interest with Hicks that [he] represents either the same legal rights related to culpability or a portion of the same culpability as did Hicks.” He claimed the principle of res judicata prevented his conviction of any greater offense than assault and battery by mob and asked the court to reduce the malicious wounding indictment accordingly. The trial court heard argument and denied the motion.
Appellant cites no cases applying the principle of res judicata in the context of co-conspirators. He argues, however, that Highsmith v. Commonwealth, 25 Va.App. 434, 489 S.E.2d 239 (1997), allows this Court to extend the principle to this context. We disagree.
In Highsmith, this Court considered whether a defendant, using the principle of res judicata, could argue that the general district court’s dismissal on the merits of a misdemeanor charge prohibited a trial in the circuit court on the same charge involving the same incident. Id. at 437-38, 489 S.E.2d at 240-41. The Court held that res judicata applies in criminal cases where “the second prosecution of a criminal case [against a defendant is] dismissed by a substantive pretrial judgment by a court which had jurisdiction to determine the case on its merits.” Id. at 442, 489 S.E.2d at 243.
The Court made clear in its ruling that all the traditional burdens on a person asserting res judicata apply in the criminal context.
A person seeking to assert res judicata as a defense must establish identity of: (1) the remedies sought; (2) the cause of action; (3) the parties; and (4) the quality of the persons for or against whom the claim is made. [Commonwealth ex. rel. Gray v.] Johnson, 7 Va.App. [614,] 618, 376 S.E.2d [787,] 789 [(1989)]. Further, to assert this defense, the party must establish that “the judgment in the former action [was] rendered on the merits by a court of competent jurisdiction.” Simmons v. Commonwealth, 252 Va. 118, 120, 475 S.E.2d 806, 807 (1996) (emphasis added).
*641 Id. at 440, 489 S.E.2d at 241. While in Highsmith the Court found all of these elements were proven, id. at 441, 489 S.E.2d at 242, we find appellant has failed to prove all the elements of res judicata in the instant case.
Appellant claims he is “the same person” as Hicks, i.e., is a privy party to Hicks’s case. He contends that because they are charged as part of the same mob, they are essentially the same people in these cases. We disagree.
There is no single fixed definition of privity for purposes of res judicata. Whether privity exists is determined on a case by case examination of the relationship and interests of the parties. The touchstone of privity for purposes of res judicata is that a party’s interest is so identical with another that representation by one party is representation of the other’s legal right.
State Water Control Bd. v. Smithfield Foods, Inc., 261 Va. 209, 214, 542 S.E.2d 766, 769 (2001).
Clearly the choices that Hicks made in defense of his case are not binding on appellant nor could appellant control Hicks’s decisions in the earlier case. See Barnett v. Commonwealth, 348 S.W.2d 834, 835-36 (Ky.1961) (“For the purpose of the doctrine [of res judicata], a party is one who has a direct interest in the subject matter of the action and has a right to control the proceedings, make defense, examine witnesses, and appeal if an appeal lies.”). If Hicks had pled guilty to all offenses, appellant would not be bound by that plea. See State v. Bradley, 361 Mo. 267, 234 S.W.2d 556, 558-59 (1950) (explaining the co-conspirators’ guilty pleas were not binding in Bradley’s case as he was not the same party and not in privity with them). If Hicks claimed self-defense or moved to suppress evidence, the fact finder’s ruling on those issues would not bind appellant. We find appellant and Hicks were not “the same person.”
In order to apply the doctrine of res judicata to estop a party from relitigating an issue, mutuality must exist.
The principle of mutuality limits the influence of the initial adjudication “by requiring that to be effective the estoppel *642 of the judgment must be mutual.” Norfolk and Western Ry. Co. v. Bailey, 221 Va. 638, 640, 272 S.E.2d 217, 218 (1980). Thus, “a litigant is generally prevented from invoking the preclusive force of a judgment unless he would have been bound had the prior litigation of the issue reached the opposite result.” Id. As recently as 1980, this Court made a considered, unanimous decision to resist the so-called “modern trend” and not to abrogate the mutuality requirement. Id. at 641, 272 S.E.2d at 219. Since that decision, other courts, including the Supreme Court of the United States in Haring v. Prosise, 462 U.S. 306, 317 n. 10, 103 S.Ct. 2368, 2375 n. 10, 76 L.Ed.2d 595 (1983), have been guided by our position on this subject.
Selected Risks Ins. Co. v. Dean, 233 Va. 260, 264, 355 S.E.2d 579, 581 (1987). Here, if Hicks were convicted of all charges, appellant would not automatically be convicted of the offenses-the Commonwealth would still have to go forward with its case against appellant. “It is well settled that a judgment of acquittal or conviction does not operate as res judicata in the prosecution of another defendant, even though the same transaction is involved.” E.H. Schopler, Annotation, Modem Status of Doctrine of Res Judicata in Criminal Cases, 9 A.L.R.3d 203 (2004). See State v. Arevalo, 132 N.M. 306, 47 P.3d 866, 869 (Ct.App.2002) (explaining the “traditional rule” that a defendant must have been the defendant in a previous criminal case in order to invoke doctrines of collateral estoppel); United States v. Musgrave, 483 F.2d 327, 332 (5th Cir.1973) (“A judgment of acquittal of one defendant in a prior trial does not operate as res judicata in the prosecution of a second defendant in a later trial, even where the same transaction is involved and the second defendant is charged as an accessory to the first.”). As no mutuality exists between Hicks’s ease and appellant’s, res judicata does not apply here.
Finally, to apply res judicata in this context would unfairly limit the Commonwealth’s ability to prosecute a case. As the United States Supreme Court explained when discussing estoppel in criminal cases involving aiding and abetting charges:
*643 The absence of these remedial procedures in criminal cases[, such as the ability to secure appellate review where a defendant has been acquitted,] permits juries to acquit out of compassion or compromise or because of “ ‘their assumption of a power which they had no right to exercise, but to which they were disposed through lenity.’ ” Dunn v. United States, 284 U.S. 390, 393, 52 S.Ct. 189, 76 L.Ed. 356 (1932), quoting Steckler v. United States, 7 F.2d 59, 60 (C.A.2 1925).
$ * * * H: $ $
But in civil cases, post-trial motions and appellate review provide an aggrieved litigant a remedy; in a criminal case the Government has no similar avenue to correct errors. Under contemporary principles of collateral estoppel, this factor strongly militates against giving an acquittal preclusive effect. See Restatement (Second) of Judgments § 68.1 (Tent. Draft No. 3, 1976) (denying preclusive effect to an unreviewable judgment).
The application of nonmutual estoppel in criminal cases is also complicated by the existence of rules of evidence and exclusion unique to our criminal law. It is frequently true in criminal cases that evidence inadmissible against one defendant is admissible against another. The exclusionary rale, for example, may bar the Government from introducing evidence against one defendant because that evidence was obtained in violation of his constitutional rights. And the suppression of that evidence may result in an acquittal. The same evidence, however, may be admissible against other parties to the crime “whose rights were [not] violated.” Alderman v. United States, 394 U.S. 165, 171-172, 89 S.Ct. 961, 966, 22 L.Ed.2d 176 (1969). Accord, Rakas v. Illinois, 439 U.S. 128, 134, 99 S.Ct. 421, 426, 58 L.Ed.2d 387 (1978).
Finally, this case involves ... the important federal interest in the enforcement of the criminal law.
*644 The Court of Appeals opinion put the point well:
“[The] purpose of a criminal court is not to provide a forum for the ascertainment of private rights. Rather it is to vindicate the public interest in the enforcement of the criminal law while at the same time safeguarding the rights of the individual defendant. The public interest in the accuracy and justice of criminal results is greater than the concern for judicial economy professed in civil cases and we are thus inclined to reject, at least as a general matter, a rule that would spread the effect of an erroneous acquittal to all those who participated in a particular criminal transaction. To plead crowded dockets as an excuse for not trying criminal defendants is in our view neither in the best interests of the courts, nor the public.” [United States v. Standefer,] 610 F.2d [1076,] 1093 [ (3rd Cir., 1979) ].
In short, this criminal case involves “competing policy considerations” that outweigh the economy concerns that undergird the estoppel doctrine.
Standefer v. United States, 447 U.S. 10, 22-25, 100 S.Ct. 1999, 2007-08, 64 L.Ed.2d 689 (1980) (footnotes omitted). See also AKAK, Corp. v. Commonwealth, 38 Va.App. 634, 639-40, 567 S.E.2d 589, 591 (2002) (noting that collateral estoppel does not apply where one party cannot obtain judicial review of the earlier decision).
As we find appellant is not “the same person” as Hicks (i.e., is not in privity with Hicks) and there was no mutuality, we conclude the doctrine of res judicata did not prohibit his conviction.
II. Cross-Examination on Mental Evaluation
Andre James was charged, along with appellant and several other individuals, with numerous offenses arising out of an incident on August 3, 2002. James’s preliminary hearing was not held at the same time as the others, and his trial had not begun prior to his testimony at appellant’s trial. The delay apparently arose from the need to have James evaluated to *645 determine if he was competent to stand trial. The evaluation determined he was competent.
At appellant’s trial, James testified for the Commonwealth, pursuant to a plea agreement. His testimony placed appellant inside the house where the mob assault occurred on August 3, which contradicted appellant’s statements. James admitted he initially told the police that he did not go into the house, and he admitted a prior conviction for grand larceny.
On cross-examination, appellant’s attorney asked James if he had been “evaluated to see whether you were competent to stand trial.” James acknowledged that he had. Counsel then asked, “Did you meet with a psychologist for evaluation?” The Commonwealth then objected to the relevance of the competency evaluation.[2] The trial court sustained the objection, and no further questions were asked about the evaluation or James’s general mental condition.
On appeal, appellant claims the evaluation indicated James was “mildly retarded,” which was admissible evidence affecting the credibility of the witness. However, appellant never asked James about retardation during cross-examination. The only questions that appellant attempted to ask related to the existence of a competency evaluation,[3] not to James’s general mental state or capacity to understand and observe events. The trial court ruled, “I don’t think his evaluation— since the Commonwealth represented that it came back positive—really is relevant.” The court did not limit appellant’s ability to ask James about his memory, ability to understand circumstances, his eyesight, or his truthfulness. Appellant filed a post-trial motion to set aside the jury’s verdict, noting, “James’[s] credibility and his intelligence were crucial factors *646 in this case” and arguing appellant was “deprived of his rights to confront and cross-examine his accusers.”
As appellant only attempted to present evidence on the existence of a competency evaluation, he has not preserved for appeal any argument regarding questions related to James’s mild retardation. See Chase v. Commonwealth, 37 Va.App. 194, 197, 555 S.E.2d 422, 424 (2001) (an assertion that federal rights were violated does not preserve state-based rights arguments for appeal). The trial court was never asked to rule on the admissibility of such evidence. Gardner v. Commonwealth, 3 Va.App. 418, 423, 350 S.E.2d 229, 232 (1986).
III. Fifth Amendment Invocation by Co-conspirator
Mark Smith, Jr., was also charged for the crimes arising out of an incident on August 3. Appellant attempted to call him as a witness. Smith’s attorney, who was contacted via telephone, did not have an objection. While on the stand, prior to Smith being sworn as a witness and while the jury was excused, the trial court advised him that he did “not have to testify ... and you should heed the advice of your counsel.” Smith then indicated that he did not want to testify.
Appellant’s counsel asked if Smith could be allowed to call his attorney and speak to him. The court refused, explaining, “I think it’s his decision. He has the right to consult with his lawyer—and he does or does not have to follow his advice— but he can cho[o]se not to testify if he wishes. He has a Constitutional right not to.” The court asked Smith again if he wished to testify, if he had consulted with his attorney and understood that he could choose not to testify. Smith again indicated he did not want to testify.
Appellant asked that the jury be brought back into the courtroom so Smith could invoke his right not to testify before them, and the trial court agreed. After the jury was seated, the court asked, “Mr. Smith, you’ve been advised of your rights and it’s my understanding you’ve chosen not to testify; is that correct?” Smith responded, ‘Tes, sir.” The court then dismissed him. Appellant’s counsel said, “Your Honor, I *647 would just state for the record that I was the one who called him as a witness and he’s pleading the Fifth Amendment and refusing to testify.”[4] Appellant filed a post-trial motion to set aside the jury’s verdict arguing “Smith waived and lost his Fifth Amendment rights when ... he entered into an agreement to testify against any codefendant, and doubly waived and lost it when he in fact testified for the Commonwealth against codefendant David A. Hicks ... fully implicating himself.”
Appellant did not argue during the trial that Smith had no right to invoke a Fifth Amendment right not to testify. He did not ask the trial court to investigate the invocation and discover if Smith had “lost” his right. He asked only that Smith be allowed to consult his counsel, which Smith did not indicate he wished to do. Although appellant did make a post-trial motion, at that point the jury was excused and the trial court could not act to correct any error without declaring a mistrial. See Newton v. Commonwealth, 29 Va.App. 433, 459-60, 512 S.E.2d 846, 858-59 (1999) (post-trial motion for a mistrial based on a trial court’s response to a question from the jury was not timely and, therefore, not preserved for appeal). Therefore, appellant did not preserve for appeal this argument that Smith improperly invoked his Fifth Amendment right. See Harward v. Commonwealth, 5 Va.App. 468, 473, 364 S.E.2d 511, 513 (1988) (“To be timely, an objection ... must be made when the occasion arises—that is, when the evidence is offered, the statement made or the ruling given.”).
IV. Exculpatory Evidence
After the jury returned its verdict, appellant filed a motion for a mistrial and to set aside the jury’s verdict. He argued, in part, that the Commonwealth withheld exculpatory information which went to the credibility of its witness, Andre James. Specifically, appellant contended the competency *648 evaluation contained information regarding “diffuse brain damage,” James’s “second grade age level” and various other problems.[5] The trial court denied appellant’s motion after examining the evaluation in camera and finding it contained no exculpatory information. We find the court did not err.
After reviewing the evaluation, which was submitted to this Court under seal, we affirm the trial court’s finding. Nothing in the report suggested that James was untruthful, given to making up facts, had impaired memory functions, or had any cognitive impairments. Nothing in the record suggested James’s mental conditions make him more likely to lie than anyone else. As no exculpatory information was contained in the evaluation, the failure to turn the document over to appellant did not deprive him of a fair trial. See Currie v. Commonwealth, 30 Va.App. 58, 68, 515 S.E.2d 335, 340 (1999) (“The sealed evidence provides no favorable information to the accused, and its exclusion did not deprive him of a fair trial.”).
Additionally, we find appellant has not met his burden on this issue. Where an appellant alleges exculpatory information was not given him by the Commonwealth, he must establish that the information would have aided in his defense and he “must show that a reasonable probability exists that the ... disclosure would have resulted in a different outcome.” Lemons v. Commonwealth, 18 Va.App. 617, 620, 446 S.E.2d 158, 160 (1994). In this case, James’s testimony established only that appellant went into the house where the incident on August 3 occurred. However, James was not the only witness to testify that appellant was present. The victim also testified that appellant was in the house and participated in the assault. Appellant himself admitted that he was present outside the house. Given this additional evidence, appellant does not establish to a reasonable degree that the outcome of the trial would have been different if the Commonwealth had disclosed that James was “mildly retarded.”
*649 Finally, the jury could determine whether James could understand and answer questions and whether James had the presence of mind to make credible observations, based on their observations of him during his testimony. They did not need specific evidence of experts’ evaluations regarding his education and I.Q. to make this determination. See Zirkle v. Commonwealth, 189 Va. 862, 870, 55 S.E.2d 24, 29 (1949) (“[Juries] have the right to determine from the appearance of the witnesses on the stand, their manner of testifying, and their apparent candor and fairness, their apparent intelligence, or lack of intelligence, and from all the other surrounding circumstances appearing on the trial, which witnesses are more worthy of credit____”); Street v. Street, 25 Va.App. 380, 389, 488 S.E.2d 665, 669 (1997) (en banc) (“Experts do not determine the credibility of a witness.”). The jury also heard impeachment of James-that he changed his story after talking to the police and that he had a felony conviction for grand larceny. Again, we are not convinced that information from the competency evaluation would have changed the jury’s determination of James’s credibility.
We find appellant’s arguments are without merit and affirm his conviction.

Affirmed.

. Although appellant was charged with various other crimes, he was convicted of only this offense.

. The Commonwealth did not make a hearsay objection to the competency evaluation.

. A competency evaluation is a report "concerning (i) the defendant’s capacity to understand the proceedings against him; (ii) his ability to assist his attorney; and (iii) his need for treatment in the event he is found incompetent.” Code§ 19.2-169.1.

. Appellant never objected to the trial court advising Smith of his rights. His only objection to Smith’s invocation of those rights was made after the jury was dismissed, contending Smith had "waived” his Fifth Amendment rights by testifying in an earlier trial.

. Appellant apparently discovered these alleged contents of the evaluation after his trial by talking to James’s attorney.