COURT OF APPEALS OF VIRGINIA

Present: Judges Frank, Kelsey and Haley
Argued at Chesapeake, Virginia


MICHAEL RAY BOONE

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 2105-04-1                  JUDGE JAMES W. HALEY, JR.
                                                         NOVEMBER 15, 2005
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                          Everett A. Martin, Jr., Judge

            Joseph R. Winston, Special Appellate Counsel (Virginia Indigent
            Defense Commission, on briefs), for appellant.

            Karri B. Atwood, Assistant Attorney General (Judith Williams
            Jagdmann, Attorney General, on brief), for appellee.


       Michael Ray Boone appeals from his conviction by jury of abduction, use of a firearm in

commission of the abduction, robbery, and use of a firearm in commission of the robbery.  Boone

contends the trial court should have granted his motion for mistrial based on the following reasons:

1) the Commonwealth's failure to make discovery and disclose exculpatory evidence, and 2) the

insufficiency of the curative instruction provided to the jury.  We disagree and affirm.

                                        I.

       Initially, we note the following with respect to a motion for mistrial:

            A trial court exercises its discretion when it determines whether it
            should grant a motion for mistrial.  Whether improper evidence is
            so prejudicial as to require a mistrial is a question of fact to be
            resolved by the trial court in each particular case.  Unless this
            Court can say that the trial court's resolution of that question was
            wrong as a matter of law, it will not disturb the trial court's
            decision on appeal.  A judgment will not be reversed for the

            [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

> improper admission of evidence that a court subsequently directs a jury to disregard because juries are presumed to follow prompt, explicit, and curative instructions.

Elliott v. Commonwealth, 267 Va. 396, 418, 593 S.E.2d 270, 284 (2004). See also Lewis v. Commonwealth, 269 Va. 209, 213-14, 608 S.E.2d 907, 909-10 (2005).

II.

On July 26, 2002, Orimolade Ogunjimi was driving in downtown Norfolk near the intersection of Granby and 31st Streets. While stopped at this intersection, Ogunjimi noticed two young men walking beside his car. Ogunjimi described one of the men as tall with an oversized green t-shirt with braided hair and the other as shorter wearing a white tank top with a two to three inch afro. Ogunjimi identified the shorter individual as Michael Ray Boone.

Ogunjimi heard the two men say something. Ogunjimi turned and saw Boone pointing a pistol into the car's window. Ogunjimi, after quickly stepping on the gas and driving off, heard two shots fired. Ogunjimi later noticed a bullet hole in his steering wheel. Ogunjimi pulled into a convenience store parking lot where he noticed a marked police car. Ogunjimi approached Officer Robert E. Chambers and gave him a description of the assailants.

That same evening, Quinn Beers visited the Tabbs Family Restaurant in downtown Norfolk. While walking toward the restaurant, Beers heard something and turned to see two men, one with a pistol pointed in his face. Beers described the individual holding the gun as approximately 5 feet 7 inches wearing a white tank top and long dark pants. Beers identified Boone as that individual.

The assailants ordered Beers to turn and face the restaurant with his back toward them. The men ordered Beers to the ground and asked "where the money was." The men removed the contents of Beers' pockets and the items he held in his hand, including his keys and cell phone. The men ordered Beers to his feet, whereupon one of them struck him with a blunt object. Beers fell to the ground, laid there for a couple of minutes, and watched the individuals walk off. After getting

up, Beers noticed the glove compartment to his car was opened and the contents scattered throughout his car. A customer of the restaurant assisted Beers inside whereupon someone dialed 911.

Officer Chambers began to search for the suspects described by Ogunjimi. Chambers testified that a third victim approached and described two men who had just robbed him at gunpoint.[1] Chambers then noticed two men running through the city park toward the Norfolk Zoo, one of whom was dressed in a white tank top. Chambers pursued the men with his K-9 partner. Shortly thereafter, with the assistance of other officers and two additional K-9 units, officers took two suspects into custody. Officer Chambers recovered a white tank top from a fence in the search area.

Officer Mark Railing, while assisting in the search, found Michael Boone lying against a fence in the park. Railing ordered Boone into the open and placed him under arrest. Railing testified that Boone was wearing dark pants and no shirt at the time of the arrest. An assisting officer recovered a business card holder from Boone and discovered Beers' driver's license inside. A police investigator later found Beers' check card inside the card holder.

Shortly thereafter, officers took the suspects back to the convenience store where Ogunjimi and Beers waited. Officers conducted a show-up with the two suspects. Both Ogunjimi and Beers identified the men as their assailants.

During the testimony of Officer J.P. Flengas, the Commonwealth offered into evidence pictures of trash bins located in the city park. One of these photos showed a pistol lying in the trash bin. Boone objected to this photo on the ground of relevance. The Commonwealth responded, "at this point [the photo of the trash bin with the pistol is] offered for the purpose of this officer conducting a search of this area and what he found in this particular area and the thoroughness of

---

[1] This third victim was not identified at trial.

the police search in this particular effort."[2]  Moreover, the Commonwealth had previously made the

following representation regarding this evidence in opening statement:

> [Police officers] found a gun nearby in a trash can. *It was not the same gun that had been used to shoot at Mr. Ogunjimi.* That gun was not recovered nor was Mr. Beers' cell phone nor was Mr. Beers' car keys.

(Emphasis added).  The trial judge overruled Boone's objection and admitted the photos.

After the close of the Commonwealth's case-in-chief, Boone reiterated his objection to the

photograph of the pistol.  Boone's counsel noted,

> Judge . . . the firearm, the picture we just introduced, I was speaking to Ms. Diaz [the Assistant Commonwealth's Attorney] and she tells me there were ballistics done on that based on the bullet that was pulled out of the steering wheel and also on the firearm and they did not match.  I was never given any reports of that.  That goes along with the stuff in discovery which has all caught me by surprise.  I want to bring it to the Court's attention.  I think it's exculpatory.

The Commonwealth responded that the photograph was not exculpatory and, therefore, was not

subject to discovery.  The Commonwealth reiterated,

> The Commonwealth is offering it for the fact the police conducted a thorough search of this particular area and they did not recover the cell phone. . . .  Those are the reasons, but this gun was not found near the defendant.  The Commonwealth made no allegations through any of its witnesses that it was found near the defendant.

The trial court noted the following in response to Boone's objection:

> That was the basis upon which I admitted it was there was a gun found in the near vicinity of where the defendant had been arrested after having been identified as being in the commission of two offenses involving a firearm.  Had I known positively this gun was not involved, I wouldn't have admitted the photograph.  When the jury comes back out, I am going to tell them the photograph of the gun is removed from evidence and they should not consider it.

---

[2] The Commonwealth introduced this evidence in direct response to appellant's questions concerning the thoroughness of the officers' search.

Boone's counsel thereafter made a motion for mistrial and stated, "I don't think the jury is simply going to forget it's there." The trial court denied the motion. After the jury returned, the trial judge gave the following curative instruction:

> Ladies and gentlemen, during the recess I was advised that a ballistics test was done that excluded the gun which is shown in one of the photographs as having been the gun that fired the bullet that ended up in Mr. Ogunjimi's car. Therefore, I am going to order that photograph be withdrawn from evidence and instruct you to disregard the photograph and any mention of it. It appears to me it's not relevant.

At no time during the trial did Boone ask the trial court for a ruling on whether or not the ballistics report was exculpatory and thus included in his discovery request.

The jury found Boone guilty of abduction, robbery, and two counts of use of a firearm in commission of a felony. The jury acquitted Boone of the attempted carjacking of Ogunjimi's car and use of a firearm in commission of that attempt, the bullet recovered from that incident being the subject of the ballistics test upon the gun found in the trash bin.

### III.

This Court addressed the issue of exculpatory evidence in Waters v. Commonwealth, 43 Va. App. 636, 600 S.E.2d 918 (2004). There, this Court held,

> Where an appellant alleges exculpatory information was not given him by the Commonwealth, he must establish that the information would have aided in his defense and he "must show that a reasonable probability exists that the . . . disclosure would have resulted in a different outcome."

Id. at 648, 600 S.E.2d at 924 (quoting Lemons v. Commonwealth, 18 Va. App. 617, 620, 446 S.E.2d 158, 160 (1994)). Additionally, in Elliott, the Virginia Supreme Court held,

> [T]here does not appear to be any point in the record w[h]ere Elliott requested the trial court to rule that the Commonwealth had failed to disclose exculpatory evidence . . . or sought a mistrial on that ground. Thus, even if argued on brief, these assignments of

- 5 -

error would be barred in any case by the lack of preservation in the trial court.

Elliott, 267 Va. at 422, 593 S.E.2d at 286-87.

Here, on three distinct occasions, the Commonwealth articulated the reasoning and purpose for introducing the photograph at issue. Each time, the Commonwealth stated Boone did not use this pistol, and the photograph was being used solely to illustrate the thoroughness of the police search. Nevertheless, while discussing the ballistics report, appellant's counsel asserted, "I think it's exculpatory." Appellant offered no other evidence or argument to the trial court on this issue. Furthermore, appellant never asked for a ruling on the issue, nor did the trial court rule *sua sponte*. By failing to ask the court for a ruling, appellant denied the trial court the opportunity to rule intelligently on the issue. That denial waives consideration of that issue upon appeal. Riner v. Commonwealth, 268 Va. 296, 325, 601 S.E.2d 555, 571-72 (2004). See also Fisher v. Commonwealth, 16 Va. App. 447, 455, 431 S.E.2d 886, 890 (1993). "It is axiomatic that an appellant cannot establish reversible error by the trial court based on nothing more than speculation or conjecture." Reeves v. Commonwealth, 42 Va. App. 650, 663, 593 S.E.2d 827, 833 (2004). Accordingly, the statement "I think it's exculpatory" alone falls short of the burden necessary to establish a discovery violation.

Additionally, appellant bases his motion for mistrial solely on the relevance and prejudicial effect of the photograph. Appellant's counsel, in response to the trial judge removing the photograph from evidence, argued, "I don't think the jury is simply going to forget [the pistol in the photograph is] there." Appellant does not raise any other ground for mistrial until appeal. Thus, not only did appellant fail to ask the trial court for a ruling on the exculpatory evidence issue, but appellant also did not seek a motion for mistrial on the Commonwealth's failure to disclose the alleged exculpatory evidence. Even assuming *arguendo* that appellant met his

burden on this issue, his argument is barred by Rule 5A:18, consistent with the Virginia Supreme Court's holding in Elliott.

IV.

Likewise, even assuming *arguendo* the Commonwealth violated the discovery process by failing to timely provide the ballistics report, that violation was cured by the trial court's subsequent instruction explaining the contents of the report to the jury. The ballistics report showed the gun depicted in the photograph was "excluded . . . as having been the gun that fired the bullet that ended up in Mr. Ogunjimi's car." Thus, appellant received the benefit of the ballistics report without it even being offered into evidence, and any error, if present at all, was harmless.

Nevertheless, appellant asserts that the trial court's curative instruction was insufficient. However, as the Virginia Supreme Court has held on numerous occasions, "[u]nless the record shows that a jury has disregarded such a curative instruction, we will presume that the jury followed it." Yarbrough v. Commonwealth, 262 Va. 388, 397, 551 S.E.2d 306, 311 (2001).

There is no evidence in the record to suggest the jury disregarded the cautionary instruction. In fact, the jury acquitted Boone of the charge involving the bullet fired during the incident involving Ogunjimi. Therefore, not only is there no evidence of disregard, the acquittal is further evidence that the jury indeed followed the curative instruction.

On brief, appellant asserts that the curative instruction "addressed the carjacking incident and not the robbery incident." However, while that instruction does mention the ballistics test as it related to the carjacking incident, it goes further: "I am going to order that photograph be withdrawn from evidence and instruct you to disregard the photograph and any mention of it." Moreover, Beers, the robbery victim, identified the appellant as the person who "had a gun

- 7 -

pointed at me." That evidence provided the jury with a basis for conviction independent of any consideration of the successfully challenged photograph.

In accordance with the holding in <u>Yarbrough</u> and the jury's verdict, we presume the jury followed the curative instruction, and the judge did not abuse his discretion in denying the motion for mistrial.

V.

For the foregoing reasons, we affirm.

<u>Affirmed.</u>