COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Felton, Judges Kelsey and Chafin
Argued at Richmond, Virginia

GREY ALEXANDER FERRELL

OPINION BY
v.      Record No. 2379-11-2          JUDGE D. ARTHUR KELSEY
JUNE 18, 2013

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF LOUISA COUNTY
Timothy K. Sanner, Judge

Graven W. Craig (Graven W. Craig, PLLC, on briefs), for
appellant.

David M. Uberman, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.

A jury convicted Grey Alexander Ferrell of malicious wounding and use of a firearm

during the commission of a felony, finding he committed the crimes as a principal in the second

degree. At trial, Ferrell sought to admit into evidence an acquittal order from a separate case

against the alleged principal in the first degree. The trial court held the order inadmissible as a

matter of law. We agree and affirm Ferrell's convictions.

I.

In May 2010, Ferrell attended a party on the shores of Lake Anna. While there, Ferrell

argued with William Luck, one of the hosts of the party. Ferrell was asked twice to leave the

party, but he refused to go. Ferrell then announced he was going to call his brother and was

overheard to repeatedly say, "click, click, boom." App. at 137. After the phone call, Ferrell left

the party and met up with his brother.

Approximately 30 to 45 minutes after Ferrell left, he and his brother returned to the party

in a dark blue sedan. Luck approached the vehicle to see who was inside. Multiple gunshots

PUBLISHED

came from the driver's side of the vehicle, striking Luck two times. Luck heard someone yell out of the car window, "Who's the bitch now?" Id. at 175. One of the witnesses saw Ferrell in the vehicle before it drove off.

Later, police investigators collected six .40 caliber shell casings at the scene of the shooting. The investigators also found the dark blue sedan at Ferrell's family home and discovered a similar .40 caliber shell casing in the back seat of the vehicle. Forensic analysis showed that all seven shell casings were "fired in the same firearm." Id. at 193.

A grand jury indicted Ferrell and his brother for malicious wounding of Luck and for use of a firearm during a felony. At the brothers' request, the trial court ordered separate trials. The trial of Ferrell's brother occurred first and resulted in a jury verdict of not guilty. Ferrell's trial came six months later and resulted in a jury verdict of guilty.

At Ferrell's trial, the Commonwealth accused him of being a principal in the second degree. Ferrell argued he could not be found guilty as a principal in the second degree because his brother, the alleged principal in the first degree, had been acquitted by a different jury. Ferrell sought to admit into evidence his brother's acquittal order to prove this point. The trial court held an acquittal order was no more admissible than a conviction order. Ferrell's guilt or innocence, the court reasoned, had to be determined by the evidence at Ferrell's trial and decided by Ferrell's jury, not determined by the evidence at his brother's trial and decided by his brother's jury. The trial court, therefore, refused to admit the acquittal order into evidence.

## II.

We begin by noting what we are not called upon to decide. Ferrell does not contend the evidence (with or without his brother's acquittal order) was factually insufficient to prove he acted as a principal in the second degree. Instead, Ferrell argues only that the trial court erred by

refusing to admit into evidence his brother's acquittal order. For several reasons, we find this argument unpersuasive.[1]

As early as 1776, "the common law of England" was "considered as in full force" in Virginia, "until the same shall be altered by the legislative power of this colony." 9 Statutes at Large of Virginia 127 (W. Hening ed. 1821) (republishing the Ordinances of Convention, May 1776). Virginia still recognizes by statute that the "common law of England, insofar as it is not repugnant to the principles of the Bill of Rights and Constitution of this Commonwealth, shall continue in full force within the same, and be the rule of decision, except as altered by the General Assembly." Code § 1-200; see Satterwhite v. Commonwealth, 56 Va. App. 557, 560, 695 S.E.2d 555, 556-57 (2010). To be sure, "[t]his principle is older than the Commonwealth itself." Taylor v. Commonwealth, 58 Va. App. 435, 443-44, 710 S.E.2d 518, 522 (2011) (citing W. Hamilton Bryson, Virginia Civil Procedure 47 (3d ed. 1997) (tracing Virginia's adoption of the common law to the royal instructions to the Virginia Company, which planted the colony at Jamestown)).

In felony cases, English common law historically segregated parties to felonies into one of four distinct categories:

- principals in the first degree who actually perpetrated the offense;

- principals in the second degree, present at the scene of the crime, who aided or abetted its commission;

- accessories before the fact, not present at the scene of the crime, who aided or abetted its commission; and

---

[1] Ferrell's petition for appeal initially raised a sufficiency challenge, but he did not include it as an assignment of error in his opening brief on appeal. We thus assume he "made an affirmative, strategic decision to abandon those issues" and hold he thereby "waived" this challenge "as a basis for reversing his convictions." Andrews v. Commonwealth, 280 Va. 231, 253, 699 S.E.2d 237, 249 (2010).

- accessories after the fact who rendered assistance after the crime was complete.

4 William Blackstone, <u>Commentaries on the Laws of England</u> *34-35 (1753).[2]

Virginia courts have recognized these distinctions, for various purposes, since our earliest days.  <u>See</u>, <u>e.g.</u>, <u>Commonwealth v. Posey</u>, 8 Va. (4 Call.) 109, 116-17 (1787) (distinguishing between "the accessory" and "the principal" regarding the benefit of clergy); <u>see</u> <u>also</u> <u>Thomas v. Commonwealth</u>, 279 Va. 131, 156-58, 688 S.E.2d 220, 234-35 (2010) (explaining the relationship between first-degree and second-degree principals); <u>Rasnick v. Commonwealth</u>, 4 Va. (2 Va. Cas.) 356, 358-59 (1823) (analyzing the difference between principals, accessories, and "principals in the second degree"); <u>Wade v. Commonwealth</u>, 56 Va. App. 689, 693-95, 696 S.E.2d 258, 259-61 (2010) (discussing the distinction between principals and accessories at common law in the context of misdemeanors).

These distinctions were relevant to determine interlocking criminal liability.  Under English common law, "an accessory could not be convicted without the prior conviction of the principal offender."  <u>Standefer v. United States</u>, 447 U.S. 10, 15 (1980) (citing 1 Sir Matthew Hale, <u>Pleas of the Crown</u> 623-24 (1800)).  But this "procedural bar applied only to the prosecution of *accessories* in felony cases."  <u>Id.</u> at 15-16 (emphasis added).  It did not apply to accused felons prosecuted as principals in the second degree.  Under common law, "a principal in the second degree could be convicted notwithstanding the prior acquittal of the first-degree principal."  <u>Id.</u> at 16 (citing <u>King v. Taylor & Shaw</u>, 1 Leach. 360, 168 Eng. Rep. 283 (1785);

---

[2] In contrast, "all parties to a misdemeanor, whatever their roles, were principals" under the common law.  <u>Standefer v. United States</u>, 447 U.S. 10, 15 (1980); <u>see</u> <u>also</u> <u>Wade v. Commonwealth</u>, 56 Va. App. 689, 693, 696 S.E.2d 258, 260 (2010) ("[A]t common law, in misdemeanors, there are no accessories, all concerned being principals." (citation omitted)); Blackstone, *supra*, at *36 ("[T]he law . . . does not descend to distinguish the different shades of guilt in petty misdemeanors.").

Queen v. Wallis, 1 Salk. 334, 91 Eng. Rep. 294 (K.B. 1703)); see also Hale, *supra*, at 437

(explaining that principals in the second degree may be "arraigned, and receive their judgment"

even if the first-degree principal "neither appears, nor be outlawed"); Wayne R. LaFave,

Substantive Criminal Law § 13.1(d)(3), at 333 (2d ed. 2003) (noting that, at common law, "the

principal in the second degree could be convicted notwithstanding the prior acquittal of the

principal in the first degree").[3]

Courts applying these common law principles have held the "acquittal inures solely" to

the benefit of the accused principal in the first degree and does "not affect the question of the

guilt or innocence" of principals in the second degree. State v. Phillips, 24 Mo. 475, 482 (1857).

The guilt of a principal in the second degree should "be determined uninfluenced by the verdict

rendered for or against any other party to the indictment." Id. In other words, when "a principal

in the first degree and a principal in the second degree in the same offense have separate trials,

the judgment against one, whether of conviction or of acquittal, has no bearing upon a judgment

against the other." State v. Peel, 111 So. 2d 728, 735 (Fla. Dist. Ct. App. 1959); see also People

v. Kief, 27 N.E. 556, 557-58 (N.Y. 1891) (holding it "quite immaterial" whether another

principal had "been acquitted or not" because "at most it would only prove that being tried first,

for some reason, [the first-degree principal] escaped conviction at the jury's hands").

Like many other states, Virginia has followed these common-law principles except where

they have been superseded by statute. For example, in Mitchell v. Commonwealth, 74 Va. (33

Gratt.) 845 (1880), a defendant was found guilty of murder as "a principal in the second degree,"

even though it was conceded that those alleged to be principals in the first degree had earlier

---

[3] The only arguable exception to this principle appears to be limited to a charge of treason as a principal in the second degree. See Hale, *supra*, at 612-13 ("[T]hose who did actually commit the very fact of treason, should be first-tried before those that are principals in the second degree, because otherwise . . . the principals in the second degree might be convicted, and yet the principals in the first degree may be acquitted, which would be absurd.").

been acquitted. Id. at 870. Mitchell held that the defendant's guilt or innocence "cannot be affected by the result which has taken place" in the other defendants' cases. Id. Although there may have been "insufficient evidence" in the *other* trials, Mitchell explained, "there was sufficient" evidence in *that* trial to prove the defendant's culpability as a principal in the second degree. Id.

Ferrell contends an earlier case, Maybush v. Commonwealth, 70 Va. (29 Gratt.) 857 (1878), casts doubt on Virginia's commitment to these common law principles. We think just the opposite. Maybush held that a defendant's prior conviction for suborning perjury could not stand if the perjurer himself was later acquitted. Maybush, however, treated suborning perjury as "accessorial in its nature," even though it was arguably "an offense separate and distinct" from perjury. Mundy v. Commonwealth, 161 Va. 1049, 1061, 171 S.E. 691, 695 (1933) (citation and internal quotation marks omitted).[4] When the General Assembly later codified suborning perjury as a freestanding crime, the "former rule requiring prior conviction of a principal before an

---

[4] At trial, Ferrell's counsel understood Maybush this way, but apparently either thought Ferrell was prosecuted as a mere "accessory" instead of a principal in the second degree or mistakenly believed an accessory under common law was no different from a principal in the second degree. App. at 201-03, 214. It was an understandable mistake, however, given that principals in the second degree were "formerly called accessories at the fact" by some jurists. Mundy, 161 Va. at 1061, 171 S.E. at 695 (citation omitted); see also Rasnick, 4 Va. (2 Va. Cas.) at 358-59 (explaining that "persons present aiding and abetting" were previously "considered only as an accessory to the fact," but "are now taken as principals"); Matters of the Crown Happening at Salop, 1 Plowden 97, 99-100, 75 Eng. Rep. 152, 157-58 (1761) ("[T]he Law anciently was, that those who were present and abetting were not Principals, but Accessaries [sic]. . . . But of late Time the Law has been held contrary in this Point, for they are taken to be Principals by all Sages of the Law."); Rollin M. Perkins & Ronald N. Boyce, Criminal Law 722 (3d ed. 1982) ("At a relatively early time the party who was originally considered an accessory at the fact, ceased to be classed in the accessorial group and was labeled a principal. To distinguish him from the actual perpetrator of the crime he was called a principal in the second degree." (footnote omitted)). In any event, the trial court correctly framed the issue as whether the acquittal of the "principal in the first degree essentially bars conviction of the principal in the second degree[.]" App. at 213.

accessory ha[d] no application." Mundy, 161 Va. at 1061-62, 171 S.E. at 695 (citing former Code § 4494 (1930), now codified as Code § 18.2-436).

Years later, the General Assembly expressly superseded the English common law rule governing accessories by providing that an "accessory, either before or after the fact, may, whether the principal felon be convicted or not, or be amenable to justice or not, be indicted, tried, convicted and punished . . . ." Code § 18.2-21. The treatment of accessories, for preclusion purposes, now parallels the common law rule traditionally applicable only to principals in the second degree.

The historic common law rule governing principals in the second degree stands on the same footing as the modern doctrine of collateral estoppel. The United States Supreme Court faced just this situation in Standefer. There, like here, a jury found a defendant guilty of being a principal in the second degree after a different jury had acquitted the alleged principal in the first degree. Standefer held that collateral estoppel did not apply in this context for several reasons.

To begin with, the state cannot appeal an acquittal — thus permitting juries "to acquit out of compassion or compromise or because of 'their assumption of a power which they had no right to exercise, but to which they were disposed through lenity.'" Standefer, 447 U.S. at 22 (citation omitted). "Central to this holding was a recognition that juries may return inconsistent verdicts based on compassion or the exercise of lenity." United States v. Harris, 701 F.2d 1095, 1104 (4th Cir. 1983). This reality undermines the equitable basis of collateral estoppel.

In addition, the "application of nonmutual estoppel in criminal cases is also complicated by the existence of rules of evidence and exclusion unique to our criminal law." Standefer, 447 U.S. at 23. It is, after all,

> frequently true in criminal cases that evidence inadmissible against
> one defendant is admissible against another. The exclusionary
> rule, for example, may bar the Government from introducing
> evidence against one defendant because that evidence was obtained

- 7 -

in violation of his constitutional rights. And the suppression of that evidence may result in an acquittal. The same evidence, however, may be admissible against other parties to the crime "whose rights were [not] violated."

Id. at 23-24 (citation omitted); see also Waters v. Commonwealth, 43 Va. App. 636, 643, 600 S.E.2d 918, 921 (2004) ("It is well settled that a judgment of acquittal or conviction does not operate as *res judicata* in the prosecution of another defendant, even though the same transaction is involved." (citation and internal quotation marks omitted)); Kief, 27 N.E. at 557-58 (holding that evidence of an "acquittal would not prove this defendant's innocence of the charge in the indictment" because "[a]t most it would only prove that being tried first, for some reason, she escaped conviction at the jury's hands").

In short, under established common law principles, the order acquitting Ferrell's brother had no legal relevance to Ferrell's guilt or innocence.[5] The differing results in the separate trials could have been the result of lenity by the jury toward the brother, a different retelling of facts by key witnesses,[6] dissimilar strategic decisions of counsel, disparate evidentiary rulings, divergent arguments of counsel, or, for that matter, an honest disagreement between the two juries about the persuasive force of the totality of the evidence.

There being no estoppel bar to the juries reaching different conclusions (so long as the guilty verdict rests on sufficient evidence), it would be wholly inappropriate for one jury to

---

[5] See, e.g., State v. Whitt, 18 S.E. 715, 716 (N.C. 1893) (holding that "[w]hat another jury had done as to [the other principal] was inadmissible for or against one charged as a principal" (citation omitted)); Steely v. Commonwealth, 116 S.W. 714, 716 (Ky. 1909) (explaining that, because "the acquittal of [the principal] did not entitle [the aider and abettor] to a discharge, proof of [the principal's] acquittal was incompetent for any purpose").

[6] The Commonwealth points out that the record in Ferrell's case does not include a complete transcript of one of the key witnesses, and thus, we cannot be sure she testified at Ferrell's trial exactly as she did in his brother's trial. We appreciate the point but need not address it in any detail. Even if her testimony were exactly the same in both trials, the acquittal order in the trial of Ferrell's brother would still be legally irrelevant in Ferrell's trial.

receive the advisory opinion of the other on the ultimate issue in the case. As the trial court succinctly put it, the evidence of an acquittal of the principal in the first degree is no more relevant than the evidence of a conviction. The guilt or innocence of the principal in the second degree must rise or fall entirely on the evidence presented at his own trial.

### III.

Finding no error in the trial court's decision to exclude from evidence the acquittal order entered in the trial of Ferrell's brother, we affirm Ferrell's convictions for malicious wounding and use of a firearm during the commission of a felony.

Affirmed.